GREEN, J.
(dissenting).
Respectfully, under the facts and circumstances of this case, I find that an order for new trial was not warranted because the error was unpreserved and/or cumulative. Accordingly, I dissent.
During the plaintiffs case in chief two experts testified that ETS causes respiratory tract diseases, but neither expert specifically found that ETS causes chronic sinusitis. Dr. Stroschein, one of the plaintiffs treating physicians, admitted on the stand that no scientific literature supported the conclusion that a causal link exists between ETS and chronic sinusitis.
Despite her own expert’s admission, plaintiff moved to prohibit the defendants from asking their expert, Dr. Anderson, whether the scientific literature supports the position that ETS does not cause chronic sinusitis. Defense counsel assured the court that it was only going to delve into matters typically asked of experts, i.e., was there any scientific literature “out there” that conflicted with the expert’s opinions, and whether there was any scientific literature that was inconsistent with the expert’s opinion. Following a hearing, extensive legal argument, and a recess to review the case law, the court found that:
If the fact that he hadn’t read anything out there that conflicts with his opinion is ... the basis of his opinion, or in part, he may say so.
But he cannot bolster his opinion by saying: And I’ve never read anything out there that conflicts with it.
There’s a difference. It’s a fine line but a very distinctive one.
Plaintiffs lawyers did not object to this ruling. Dr. Anderson, in response to the question of what he did to prepare for his opinion in this case, stated:
I’ve reviewed all of her medical records. I’ve read the depositions of her treating-doctors. I’ve reviewed her CAT scans. I’ve reviewed her allergy testing.
[[Image here]]
I’ve reviewed some medical literature that’s available.
Counsel then asked “[a]nd do all the things that you’ve reviewed support the opinions that you’re about to offer to this jury?” Dr. Anderson replied, ‘Tes.” Plaintiff’s counsel did not object or seek a curative instruction for Dr. Anderson’s testimony. During the course of Dr. Anderson’s direct examination, he opined that exposure to ETS may have worsened the plaintiffs condition, but he did not believe that her exposure caused her medical problems.
On cross-examination, in an attempt to clarify his understanding of a paper published by the Florida Allergy and Immunology Society regarding ETS and chronic sinusitis, Dr. Anderson stated:
I think what they’re saying is [ETS] can aggravate a sinus condition, and the effect of that, what they want is for people to try and avoid it. I don’t think they’re saying that cigarette smoke causes sinusitis because its never been shown in any medical literature.
*146 Plaintiffs counsel again did not object, move to strike, or seek other relief from the court with regards to this statement. Instead, counsel attempted to discredit the doctor by asserting, “everything you know about the case is what was given to you by the tobacco attorneys.” The doctor responded, “No”.
On redirect, defense counsel elicited from Dr. Anderson the items, including the leading texts in the field, that he used in reaching his opinion. The medical literature was not read to the jury or admitted into evidence. Instead, the doctor merely reiterated that he had found no articles in the medical texts to support the proposition that exposure to ETS causes chronic sinusitis.
Defendants’ ear, nose, and throat expert, Dr. Kronberg, testified that he had reviewed the plaintiffs medical records, depositions, and spent several hours reviewing the medical literature in the preparation of his opinion. ' He diagnosed the plaintiff as suffering from chronic sinusitis caused by allergies, re-occurring upper respiratory infections, anatomic abnormalities and scarring from surgery.
On cross-examination, in response to a question posed by plaintiffs counsel, Dr. Kronberg testified that: “[n]one of the [medical] literature I had up until that point had indicated that [ETS] was something that caused sinusitis, and nothing that I’ve read since then, with everything that I’ve been searching for, I can’t find it.” Again, no objections were made and no other relief was sought by plaintiffs counsel.
At the close of all the evidence, the jury returned a verdict in favor of the defendants. The plaintiff filed a motion for new trial arguing, in part, that:
Counsel for the Defendants misled the Court concerning Florida law on the use of authoritative texts during direct-examination. Defense counsel led the Court astray by arguing that since Plaintiffs counsel had cross-examined upon authoritative texts, the door was opened for redirect examination for defense counsel to bolster the witness’ testimony by referring to various authoritative texts and more prejudicially, to bolster the testimony of the defense expert witness by suggesting that there was no authoritative literature which was contrary to the defense expert’s position. The Court was originally mislead by this improper argument and allowed Dr. Anderson (on re-direct) to testify as indicated.... The legal argument presented to the Court by counsel for the Defendant was contrary to the clear and established evidentiary law of the State of Florida.
In response, the defendants’ claimed that they
did not improperly bolster their expert’s opinion by the use of authoritative materials because:
§ 90.706 only prohibits introduction of “statements of facts or opinions contained in” a treatise and that did not occur; an expert can testify regarding the source of facts and data relied upon informing his opinion; and a party may re-examine a witness about matters raised during cross-examination. In addition, the allegedly improper testimony was cumulative to testimony which was properly introduced during the cross-examination of both parties’ experts and, thus, any error was harmless.
The trial court found that Dr. Anderson’s testimony was “clear bolstering,” and that the plaintiffs attempted impeachment of Dr. Anderson did not “open the door” to such evidence. It also found that the testi *147 mony was not cumulative. Finally, the court granted a new trial finding that:
This Court, in granting the Plaintiff a new trial does so due to the highly prejudicial nature of the improperly admitted evidence requiring a retrial and as a warning to lawyers who argue positions to the Court that they knew or should have known was contrary to the law. While the Defendants convincingly argued and persuaded this Court who announced its unfamiliarly [sic] with this area of the law, they did so without any authority to support their argument. It was also brought to this Court’s attention in the Plaintiffs Motion for New Trial, that these [sic] same lawyer had made similar arguments to an experienced civil judge, ... prior to the trial before this Court and were not permitted to do that which they argued to this Court was permissible. Lawyers should be cautioned that when they invite error, they do so at their own peril.
The Defendants appeal, arguing that the trial court erred in ordering a new trial based on a post-verdict reversal of a correct evidentiary ruling; and/or in ordering a new trial based upon unpreserved error. Essentially, the Defendants argue that the trial court’s ruling regarding Dr. Anderson’s testimony was proper, and even if it wasn’t, the plaintiff failed to renew her objection to this testimony and therefore the “error” was unpreserved and waived. I agree, and accordingly, would reverse the order granting a new trial.
At trial, the court, after lengthy argument, ruled that Dr. Anderson could testify on direct examination that he hadn’t read anything in the médical literature that conflicted with his opinion. Dr. Anderson did exactly that.. Plaintiffs counsel did not object to Dr. Anderson’s testimony on direct nor did counsel seek a new trial on the basis of this testimony. Thus, any error in the admission of Dr. Anderson’s direct testimony was waived by the plaintiff and cannot provide the basis for an order for new trial. See Martinez v. Poly-Ply Corp., 29 Fla. L. Weekly D1947 (Fla. 3d DCA August 25, 2004) (holding that order for new trial based on unpreserved error cannot stand). See also Celentano v. Banker, 728 So.2d 244, 245 (Fla. 4th DCA 1998) (finding trial court lacked jurisdiction to grant a new trial on grounds not preserved for review or fundamental error).
Moreover, Dr. Anderson’s response to counsel’s questions on cross-examination were also not objected to and a mistrial or curative instruction was not sought. This elicited cross-examination testimony[1] is, in essence, the same testimony as the testimony given on re-direct about which plaintiff bases her motion for new trial. Therefore, for this additional reason, I think the order for new trial was improper. See Allah v. State, 471 So.2d 121, 122 (Fla. 3d DCA 1985) (party that elicits testimony on cross-examination cannot complain when adverse party elicits same testimony or explores. the subject of the testimony); City of Miami Beach v. Klein, 414 So.2d 620 (Fla. 3d DCA 1982); La Rocca v. State, 401 So.2d 866, 868 (Fla. 3d DCA 1981).
Finally, Dr. Anderson’s testimony was not the only evidence about the absence of medical literature finding a causal connection between ETS and chronic sinusitis. Such evidence was also presented through *148 plaintiffs own expert, and Dr. Kronberg. Thus, I also believe that Dr. Anderson’s comments were cumulative, and therefore, insufficient grounds for the granting of a new trial. See Quinn v. Millard, 358 So.2d 1378, 1383 (Fla. 3d DCA 1978) (“The rule is well-established that even if error exists in the admission of expert testimony, the harmless error rule will be applied if such evidence is simply cumulative to other evidence admitted without objection.”).
Thus, for all of the foregoing, I respectfully would reverse.

. Dr. Anderson's response to plaintiff's counsel's question regarding the paper published by the Florida Allergy and Immunology Society was:
I think what they're saying is [ETS] can aggravate a sinus condition, ... I don’t think they're saying that cigarette smoke causes sinusitis because it’s never been shown in any medical literature.